

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ANDREW ALLOCCO, ABRAHAM
FERNANDEZ, STENY GARCIA-
MONTES, AGUSTIN QUEVEDO,
ALEX SILVA, MANUEL MONTALVO,
AND JOHN ALLEN,

       Plaintiffs,

vs.

CITY OF CORAL GABLES, A
Municipal Corporation, and THE
UNIVERSITY OF MIAMI, a
non-profit Florida corporation,

      Defendants.

_____/

CASE NO. 99-2443-CIV-GOLD

MAGISTRATE JUDGE SIMONTON

## PLAINTIFFS, ALLOCCO, FERNANDEZ, GARCIA-MONTES, QUEVEDO, SILVA, AND ALLEN'S
## FIFTH AMENDED COMPLAINT

Plaintiffs, ANDREW ALLOCCO, ABRAHAM FERNANDEZ, STENY GARCIA-MONTES, AGUSTIN QUEVEDO, ALEX SILVA, and JOHN ALLEN, individually, sue Defendants, CITY OF CORAL GABLES, A Municipal Corporation, and THE UNIVERSITY OF MIAMI, a private, Non-Profit Florida Corporation for damages and in support allege as follows:

FISCHER & MINSKI, P.A. , 4651 Sheridan Street, Suite 325, Hollywood, Fl 33021, Tel: (954) 963-2773; Fax: (954) 963-2902

1.    This is an action for damages in excess of Fifteen Thousand Dollars ($15,000)
      exclusive of costs, interest and attorneys fees.

2.    At all times material hereto, Defendant, CITY OF CORAL GABLES, hereinafter
      referred to as "CORAL GABLES" or "City Of Coral Gables", is a municipal
      corporation, formed pursuant to the laws of the State of Florida, located within Dade
      County, Florida, which, as part of its duties, maintains and supports a municipal law
      enforcement agency, known as the Coral Gables Police Department ("CGPD"),
      which provides for the safety, security, order and protection of the residents, visitors,
      and employees of the City of Coral Gables, including all residents, visitors, and
      employees of the University of Miami Campus which is located within the municipal
      boundaries of Coral Gables, Florida.

3.    At all times material hereto, Defendant CORAL GABLES maintained the CGPD
      pursuant to Home Rule Powers secured in the Constitution of the State of Florida,
      Art. 8 Section 2(b) and incorporated in Florida Statutes Section 166.021(4), with the
      purpose of providing safety, security, order and protection for all residents, visitors
      and employees City of Coral Gables, Florida.

4.    Defendant, THE UNIVERSITY OF MIAMI, (hereinafter referred to as "UNIVERSITY"
      or the "University of Miami" or "UM"), is a private, non-profit Florida corporation,
      incorporated under the laws of the State of Florida, located within the City of Coral
      Gables in Dade County, Florida, providing undergraduate, graduate and post-
      graduate education to individuals. The campus of the UNIVERSITY comprises

certain property within a 260-acre campus which included 101 buildings with over 2.8 million square feet.

5.   At all times material to this action, Defendant, UNIVERSITY, maintained a Public Safety Department (UMPSD) which assumed a duty of providing for the safety, protection and crime prevention at the UNIVERSITY and for the benefits of UNIVERSITY OF MIAMI residents and guests.

6.   Plaintiff, ALLOCCO, hereinafter referred to as "ALLOCCO", is a resident of Dade County, Florida, currently employed by both the University and the City of Coral Gables as a law enforcement officer.

7.   Plaintiff QUEVEDO, hereinafter referred to as "QUEVEDO", is a resident of Dade County, Florida, who began working as a UMPSD officer on or about October 30, 1993, and is no longer employed in said capacity having voluntarily resigned his position.

8.   Plaintiff, SILVA, hereinafter referred to as "SILVA", is a resident of Dade County, Florida, currently employed by both the University and the City of Coral Gables as a law enforcement officer.

9.   Plaintiff, FERNANDEZ, hereinafter referred to as "FERNANDEZ", is a resident of Broward County, Florida, currently employed by both the University and the City of Coral Gables as a law enforcement officer.

10. Plaintiff, GARCIA-MONTES, hereinafter referred to as "GARCIA-MONTES", is a resident of Dade County, Florida, and is currently employed by both the University and the City of Coral Gables as a law enforcement officer.

11. Plaintiff, MONTALVO, hereinafter referred to as "MONTALVO", is a resident of Dade County, Florida, and is currently employed by both the University and the City of Coral Gables as a law enforcement officer.

12. Plaintiff, ALLEN, hereinafter referred to as "ALLEN", is a resident of Dade County, Florida, and is currently employed by the University and the City of Coral Gables as a law enforcement officer.

13. At all time material hereto, Plaintiffs, ALLOCCO, FERNANDEZ, GARCIA-MONTES, QUEVEDO, SILVA, MONTALVO and ALLEN, are employed by both the University and the City of Coral Gables as law enforcement officers for the primary purpose of prevention and detection of crime and the enforcement of penal, traffic, or highway laws of the State of Florida, Dade County and City of Coral Gables, primarily in and about the University of Miami campus located on public property owned by the City of Coral Gables, but also anywhere within the city limits of the City of Coral Gables even if outside the campus limits of the University.

14. All acts, actions, statements and misrepresentations alleged herein, at all times material hereto, occurred within Dade County, Florida, and venue is properly laid in Dade County, Florida.

15. Pursuant to agreement between the University of Miami and the City of Coral Gables, the police department for the City of Coral Gables interviewed, screened, trained, hired and supervised persons to act as law enforcement officers employed by both the University and the City. By agreement between the City and the University, these officers patrolled primarily the University campus and were known as UMPSD officers.

16. Although these officers were trained and sworn in as Coral Gables law enforcement officers also, and were supervised by the CGPD, they were paid solely by the University, and were not allowed the same benefits, including retirement and disability benefits as those law enforcement officers paid by the City of Coral Gables.

17. The University and the City by and between themselves agreed that the officers hired by the City of Coral Gables for work on the University campus would be part-time, not full-time, law enforcement officers and would not be eligible for or considered by the City or the University as having the same rights, benefits and privileges as full-time law enforcement officers for the City of Coral Gables.

18. As a result and consequence of the agreement between the City and the University for the UMPSD officers to be part-time, not full-time law enforcement officers, despite their training, experience, and employment by the City of Coral Gables, as well as the University, the Plaintiffs have not been afforded the same rights as full-

time Coral Gables law enforcement officers, have not been afforded the same rights, privileges and benefits as all other full-time law enforcement officers within the State of Florida.

19.   The University and the City have recently represented to Plaintiffs as well as to others that Plaintiffs are not now, nor have they ever been full-time law enforcement officers and, although certified as part-time officers for the City of Coral Gables, Plaintiffs are solely employees of the University.

20.   As a result and consequence of the relationship by and between the Plaintiffs and Defendant, CORAL GABLES, arising from the screening, hiring, training, and supervision of Plaintiffs by the CGPD, and by virtue of Plaintiffs status as "part-time" officers or employees of the City of Coral Gables, Plaintiffs and Defendant, CORAL GABLES, were in privity of contract at all times material hereto in an employer/employee relationship.

21.   As a result and consequence of the relationships by and between Plaintiffs and Defendant, University of Miami, arising from monetary considerations, Plaintiffs and Defendant, University, were in privity of contract at all times material hereto.

## COUNT I-NEGLIGENT MISREPRESENTATION

22.   Plaintiffs reallege and reaver paragraphs 1-21 above and incorporate them by reference as is fully set forth.

23.    This is an action for negligent misrepresentation in excess of $15,000.00 exclusive of interest and costs.

24.    From July of 1980 to approximately March 10, 1996, Defendant, CORAL GABLES, through its agents, representatives and employees, engaged in a pattern of conduct which included making negligent representations and statements to each of the Plaintiffs, and to the public generally regarding Plaintiffs' status as law enforcement officers, which were of such a nature to mislead each of the Plaintiffs into changing his or her position to his or her detriment.

25.    From July of 1980 to approximately March 10, 1996, Defendant, University of Miami, through its agents, representatives and employees, engaged in a pattern of conduct which included mailing negligent representations and statements to each of the Plaintiffs regarding their status as law enforcement officers, and to the public generally which were of such a nature to mislead each of the Plaintiffs into changing his or her position to his or her detriment.

26.    Both the City of Coral Gables and the University of Miami, individually and jointly made misrepresentations to Plaintiffs and to the general public with the intention that the misrepresentations should be acted upon by each of the Plaintiffs, and each of the Plaintiffs did, in fact, act and rely upon those negligent misrepresentations in applying for jobs with the UMPSD, commencing work for the

UMPSD, and continuing to work for the UMPSD, each Plaintiff devoting several or more years to the UMPSD.

27.     Because of the misrepresentations and misstatements by both Defendants to Plaintiffs specifically and to the general public generally concerning the status of Plaintiffs as law enforcement officers, Plaintiffs became employed by the City of Coral Gables and the University and remained employed with both Defendants despite the agreement between the City and the University that all Plaintiffs hired would be part-time, not full-time, law enforcement officers.

28.     All misrepresentations and misstatements made by the City and the University to Plaintiffs directly or to the general public knowing it would be heard or read by Plaintiffs, were made with the intent that they were to be relied upon by Plaintiffs and were, in fact, relied upon by Plaintiffs in determining whether to commence work as a UMPSD officer and remain officers for the University.

29.     The misrepresentations and misstatements made by the City and the University, through its agents, employees and representatives, were designed to and made with the purpose of recruiting Plaintiffs to become UMPSD officers and to entice Plaintiffs to remain employed as UMPSD officers. They included the following misrepresentations:

        a.      misrepresentations made to Plaintiffs by Sgt. Werbin and Officer Herbst and others upon applying for positions that Plaintiffs were

being hired by the City of Coral Gables to be regular, ordinary Coral Gables police officers and would simply be assigned to the CGPD, University Of Miami Division;

b. misrepresentations made by Defendant, Coral Gables' recruiters to Plaintiffs upon applying for UMPSD positions that Plaintiffs, because they were CGPD officers, would be able to transfer to any other division of the CGPD when they wanted reassignment;

c. Misrepresentations made by the Coral Gables police chief to Plaintiffs and to the general public at the same time that at all times Plaintiffs were dressed in Coral Gables uniforms, wearing Coral Gables badges, that they were employed by Coral Gables and were Coral Gables police officers;

d. That Plaintiffs were paid as full-time police officers like any other Coral Gables police officers patrolling the City of Coral Gables;

e. That Plaintiffs had full authority and jurisdiction at all times to arrest and investigate over any part of the City of Coral Gables, including areas not located within the campus of the University of Miami;

f. That Plaintiffs would be able to work any off duty police jobs to the same extent as any other Coral Gables police officer;

g.    That Plaintiffs have all the rights and privileges under Florida Statutes,
      Section 943, that all other Coral Gables police officers have according
      to officers from the Coral Gables internal Affairs department;

h.    That the policeman's Bill of Rights applied to them as regular full-time
      law enforcement officers;

i.    That Plaintiffs because of their employment as law enforcement
      officers with the City of Coral Gables, had a protected job
      accompanied by all due process rights other Coral Gables law
      enforcement officers have;

j.    That UMPSD officers were regularly assigned to other positions within
      the CGPD besides the University of Miami campus;

k.    That UMPSD officers have to follow all standard operating procedures
      of the City of Coral Gables at all times and that Coral Gables orders
      and directives are primary and foremost above and before University
      rules and procedures because Plaintiffs are regular Coral Gables
      police officers those patrolling the City generally;

l.    That when Plaintiffs were sworn in by the Coral Gables Police Chief,
      they were sworn to uphold and enforce the laws of the United States
      of America, of the State of Florida and ordinances of the City of Coral
      Gables.

       m.     That Plaintiffs were required to and did attend roll call at the CGPD on a daily basis at which time they were instructed like all other Coral Gables law enforcement officers;

       n.     That Plaintiffs working the University of Miami division had parity in pay and benefits with all other Coral Gables law enforcement officers; and

       o.     that Plaintiffs would be able to apply to and work for other police departments with the experience and seniority from working for the City of Coral Gables that they would have had working for any other police department.

30.    The Defendants individually and jointly made the above-detailed misrepresentations with the intention that they should be acted upon by each of the Plaintiffs, and each of the Plaintiffs did, in fact, act and rely upon those negligent misrepresentations in applying for, commencing work for, and continuing to work for the UMPSD, each Plaintiff devoting several or more years to the UMPSD.

31.    Defendants' representations to each of the Plaintiffs were false and deceived each of the Plaintiffs to their detriment. At no time were Plaintiffs informed that by agreement between the City and the University, they were to be and were certified with FDLE as part-time law enforcement officers not entitled to the same rights,

benefits and privileges as Coral Gables law enforcement officers certified as full-time law enforcement officers.

32.    As a direct, proximate, natural and foreseeable consequence of the foregoing, each of the Plaintiffs has suffered actual damages which include but are not limited to lost opportunities, lost wages, lost benefits, lost seniority, and any and all damages which naturally and foreseeably have arisen as a result of the Defendants' tortious conduct. Their careers as law enforcement officers have been hurt and delayed and each would upon resigning from the University have to begin his or her law enforcement career essentially all over again.

33.    Had not Defendants made the misrepresentations and misstatements to Plaintiffs alleged herein, none of the Plaintiffs would have commenced work for the City of Coral Gables and the University, nor would any of the Plaintiffs have continued to work for Defendants. Each of the Plaintiffs but for the misrepresentations would have commenced working for a police department as a full time law enforcement officer to further their careers and gain experience usable in police departments.

34.    The negligent misrepresentations of those employees, agents and representatives of the Defendant, University of Miami, and the Defendant, City of Coral Gables were of such nature that Plaintiffs would hereby reserve the right to amend their Complaint to allege exemplary damages.

WHEREFORE, Plaintiffs, ANDREW ALLOCCO, ABRAHAM FERNANDEZ, STENY GARCIA-MONTES, AGUSTIN QUEVEDO, ALEX SILVA, MANUEL MONTALVO and JOHN ALLEN, respectfully request this Honorable Court enter a Judgment in favor of each of the Plaintiffs individually and against the Defendants, jointly and severally, in an amount exceeding $15,000 together with costs, prejudgment interest, post judgment interest, attorneys' fees, and other relief as the Court deems appropriate.

## COUNT II-VIOLATION OF THE FIRST AMENDMENT

### Defendant City of Coral Gables

35.    Plaintiffs ALLOCCO, FERNANDEZ and SILVA  reallege and reaver paragraphs 1-21 above and incorporate them by reference herein as if fully set forth.

36.    This is an action for damages against Defendant, Coral Gables, for violation of the First and Fourteenth Amendment to the Constitution of the United States of America for damages in excess of $15,000.00 exclusive of interest and costs.

37.    Defendant, Coral Gables, is a municipality organized under the laws of the State of Florida and therefore,  subject to the First Amendment by incorporation through the provisions of the Fourteenth Amendment.

38.    Plaintiffs, at all times material, were members of the CGPD.  Plaintiffs were subject to the rules and regulations governing all CGPD officers as well as being subject to

the policies and procedures' manual attached as Exhibit 1[1] in which the Plaintiffs and other similarly situated officers were referred to as the UM division in these manuals and, Coral Gables, by and through the CGPD, interviewed, screened, trained and disciplined the Plaintiffs and ultimately in violation of their due process rights fired Plaintiffs ALLOCCO and FERNANDEZ.

39.   Notwithstanding that the Plaintiffs were sworn into office by the CGPD Chief of Police, were issued uniforms, badges and identification identical to other CGPD officers and that the screening, training and disciplining of the Plaintiffs were conducted by CGPD, Plaintiffs were advised subsequent to their hiring (in most cases years after their hiring) by CGPD that Plaintiffs were not entitled to the same rights and benefits as other CGPD officers who were not assigned to the UMPSD.

40.   Plaintiffs, at all times material herein, had believed that they were full time public employees entitled to all of the rights and benefits associated with such employment. When Coral Gables advised them that they were not CGPD officers, Plaintiffs began verbally questioning certain prior acts and procedures by Coral Gables and the CGPD, including but not limited to, sending private "police" out to respond to public 911 calls, requiring private "police" to respond to CGPD

---

[1]The entire policy and procedures' manual given to police officers is several looseleaf notebooks that are too voluminous to attach to the Complaint. Plaintiffs have extracted and attached the Manual of Rules and Regulations and the Index to the Standard Operating Procedures. Defendants possess the complete policy and procedures' manual. If the Court requires, the additional documents can be filed.

dispatchers and to risk their lives and those of private citizens in responding to calls and providing back-up to CGPD officers needing assistance, and questioning various statistical reporting procedures that were misleading to Federal, State and Municipal agencies for purposes of procuring funds. UM called these "police" public safety officers employed by a private entity but required them to undertake public officer duties. All of these questions addressed matters of public concern, thereby warranting First Amendment protection.

41.     Plaintiffs' voicing their concerns on the matters contained in the foregoing paragraphs, addressed matters of public concern not only at the local level but at all levels of government. There are hazards being placed locally on the citizens of Coral Gables in that they may be having their requests for police assistance (911 calls) responded to by private "police" and, the public concern problem expands to all citizens in any municipality who are having crucial public funds diverted wrongly from their municipality and for whom the municipality would otherwise legitimately qualify for such funds. The Public are experiencing a risk without a corresponding legitimate benefit.

42.     As the substantial and motivating factor and as a direct and proximate result arising from Plaintiffs' voicing of legitimate public concerns, Plaintiffs were subjected to abuse, pretextual disciplinary procedures and other negative job consequences until eventually Plaintiffs ALLOCCO and FERNANDEZ were fired and the other Plaintiffs

suffered either a chilling effect on their voicing complaints and/or were retaliated against in the performance of their jobs.

43.   Plaintiffs were retaliated against for going public with matters of vital concern to the public by Defendants' various acts including but not limited to being fired.

Wherefore, Plaintiffs respectfully ask that this Honorable Court to enter judgment in its favor against Defendants for damages resulting from violating Plaintiffs' First Amendment rights and such other relief as this Court deems just and fair.

## COUNT III-CONSPIRACY

### Defendants, City of Coral Gables and University of Miami

44.   Plaintiffs reallege and reaver paragraphs 1-21 above and incorporate them by reference herein as if fully set forth.

45.   This is an action for damages against the Defendants, Coral Gables and UM, for conspiracy, in excess of $15,000.00 exclusive of interest and costs.

46.   Coral Gables used its position as a municipal corporation to conspire with the University of Miami to defraud the Plaintiffs of benefits, wages and other pecuniary advantages.

47.   UM is a private university situated within the confines of Coral Gables.   UM comprises thousands of students, teachers and other personnel. UM also provides on campus student housing.

48.     To provide security for its campus, UM entered into a contract with Coral Gables, whereby Coral Gables used its name and position as a municipality to induce Plaintiffs to either enter the police academy believing they would be full time employees of the CGPD or transfer from other police departments to the CGPD with the mistaken understanding that they would be full time CGPD Officers assigned to the UM division. As part of Defendants' deception, Plaintiffs were issued policy and procedure manuals indicating that they were CGPD Officers assigned to the UM Division. See Exhibit 1.  Also, organizational charts listed UM Division as part of the CGPD.

49.     In furtherance of the conspiracy, Coral Gables and UM agreed that CGPD would train, supervise, manage and discipline the Plaintiffs. Defendants UM and Coral Gables both committed overt acts that either were done lawfully for an unlawful purpose or were done unlawfully for a lawful purpose.

50.     Some of the acts described in paragraph 47 are:

        a)     Delegating the nondelegable sovereign police powers to a private entity;

        b)     Defrauding Plaintiffs into believing they were full time police officers with all benefits therein, when both Defendants knew that they never intended to honor that promise;

        c)     Using public funds to train personnel who were allegedly full time private employees;

d)   Utilizing false statistics as to the number of employees actually employed by CGPD and UM to obtain Federal and Municipal Funds;

e)   Violating the Campus Security Act and Student Right to Know Act, by falsifying data;

f)   CGPD denying Plaintiffs as their employees when required to provide any benefits normally associated with CGPD officers (e.g., Policeman's Bill of Rights), by claiming they were UM employees; and,

g)   UM denying Plaintiffs benefits by claiming they were subject to CGPD rules and regulations.

51.   As a direct and proximate result of the conduct of the Defendants, Plaintiffs have sustained damages.

WHEREFORE, Plaintiffs respectfully ask that this Honorable Court to enter judgment in its favor against Defendants for damages resulting from conspiracy and such other relief as this Court deems just and fair.

## COUNT VI

### UNFAIR LABOR PRACTICES
### VIOLATION OF F.S. 448 ET. SEQ.

### Defendant University of Miami

52.   Plaintiffs reallege and reaver paragraphs 1-21, above and incorporate them by reference herein as if fully set forth.

53.    This is an action for damages resulting from Defendant, UM's violation of a statutory right in excess of $15,000.00 exclusive of interest and costs.

54.    Florida Statute §448.102 prohibits an employer from taking retaliatory personnel action against an employee because the employee has:

> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

55.    Plaintiffs have mailed written notification of their objections to Defendants.

56.     Plaintiffs have objected to *inter alia*, wrongful reporting of statistics relating to crimes on campus, wrongful denial of Plaintiffs rights to join the FOP, wrongful responding to off campus calls if in fact they were UM employees only.

57.     As a direct and proximate result of Plaintiffs acts of reporting Defendant, Coral Gables' wrongdoing, Plaintiffs were retaliated against by being fired, subjected to baseless disciplinary hearings, and loss of benefits.

58.     As a direct and proximate result of Defendant's retaliation, Plaintiffs suffered damages.

        WHEREFORE, Plaintiffs respectfully ask that this Honorable Court to enter judgment in its favor against Defendant, University of Miami for damages, attorney fees per statute and costs and punitive damages and such other relief as this Court deems just and fair.

## COUNT VI-RICO

## Defendant, University of Miami

59.     Plaintiffs reallege and reaver paragraphs 1-58 above and incorporate them by reference as if fully set forth herein.

60.     This is an action for injunctive relief, damages and return of property based on violations of Florida's Racketeer Influenced Corrupt Organizations Act ("Rico") pursuant to Florida Statutes §895.01 et. seq., in excess of $15,000.00 exclusive of interest and costs.

61.     Defendants, UM and Coral Gables, engaged in a scheme whereby they could profit by entering into a pattern of activity that would defraud various job applicants for the CGPD into believing that they were being interviewed, trained, and subsequently hired by the CGPD with all rights and benefits appurtenant thereto. The scheme was continuous and ongoing in that UM and Coral Gables took specific steps to continue the charade after hiring the Plaintiffs by having CGPD conduct all disciplinary hearings and investigations concerning the acts of the UM Division officers, provide Plaintiffs and fellow UM division members with official City of Coral Gables' summonses, traffic citations, control numbers, training, and supervision, CGPD officer ranking, and the permitting of the same uniforms, badges, ID and other indicia of being a CGPD officer being worn by UMPSD personnel (the "Scheme"). The Scheme constitutes a pattern of racketeering activity under Section 895.02 and 895.03 of the Florida Statutes. These acts include, but are not limited to: the operation of organized frauds in violation of Sections   817.02 and 817.034(4)(a) 1 of the Florida Statutes; the use of the mails and technology to commit fraud to perpetuate their Scheme; the use of interstate wire communications, including but not limited to the telephone for the purpose of and with the specific intent of defrauding the Plaintiff through the Scheme devised by the Defendants; the use of verbal, written and printed communications including but not limited to the same specific acts against (prior predicate acts), others with the intention of extorting a monetary advantage; various violations of interstate

commerce to promote, manage, establish, carry on and facilitate the unlawful activities described above.

62.    Specific instances of the foregoing include but are not limited to,

| DATE | TYPE | AUTHOR | ADDRESSEE | SUBJECT |
|------|------|--------|-----------|---------|
| 12/9/98 | Letter (All 013894) | Chief Skinner | Christiansen | UM violation of F.S. §119.07 (1)(a) |
| 10/13/94 | Letter | Shoemaker & Chief Butler | Dir. Alcohol Tobacco and Firearms. | Sworn Certification to ATF that UMPSD is a division of CGPD |
| 10/13/94 | Purchase Order Interstate Mail | Shoemaker, UMPDS Chief Butler, CGPD | Glock, Inc. Georgia | Purchase Order for gun on City letterhead and shipping the gun to CGPD. |
| 4/3/00 | Letter (All 007591) | L.R. Boemler FDLE Field Specialist | Esther Cummings Mgr. Field Section | Request for clarification on part time status of UMPSD officers |
| 5/8/00 | Letter (All 007997) | Asst. Gen Counsel Joseph White | Esther Cummings | Establish UM not "employing Agency" and that City is employer. |

| 4/29/00 | Letter (All 007585) | Shoemaker | Fish | UM knew that City controls the operations of UMPSD including mandate of training and control of officers. |
|---|---|---|---|---|
| 2/12/93 | Invoices All (014436-38) | Jacksonville, Tampa and Orlando Newspaper Classifieds | UM | Ads for Police Officers advising applicants to appear at CGPD |
| Undated | Standing Purchase Orders (All 009093-103) | Sgt. Gerlach | Martin's Lamar Lou's Gunshop Goodyear Auto Florida Bullet Manny's Auto Metro Distr. Valor Corp. | Representing itself as Law Enforcement Agency to obtain discounts and items not available to private entities |
| Undated | Recruitment Bulletin (All 014403) | Unsigned | Potential Job Applicants | Representation of job for police officer no mention of part time. |
| 2/8/94 | Memorandum | Christensen | All Police Officers | CGPD guidelines for duties and responsibilities. |
| Undated | UMPSD Report Distribution (All 014502) | Unsigned | | Indicates directions to UMPSD staff to copy confidential public records. |

| 10/8/00 | Memorandum (All 013907) | Gary Broughman | All Officers | Request for hours to submit to FEMA during hurricane alert duties. |
|---|---|---|---|---|
| 6/27/96 | Memorandum | Werbin, Sgt. | Shoemaker | Sgt. Werbin is a CGPD officer who does background checks using FDLE Teletype for a private entity at city expense. |
| 11/30/98 | Invoice-Mail (All 013897) | Werbin, Sgt. | Lou's Gunshop | Representing itself as Law Enforcement Agency to obtain discounts and items not available to private entities |
| 5/12/98 | Invoice-Mail (All 013995) | Fla Radio Rental Inc. | UM Police | Representing itself as Law Enforcement Agency to obtain discounts and items not available to private entities |
| 7/31/96 | Invoice-Mail (All 014162) | Florart Flock Process, Inc. | Sgt. Gerlach | Private Entity purchasing Official Police Patches. |

| 7/12/96 | Official Motor Vehicle Accident Report(Mail) (All 10902-04) | CGPD | Dept of Motor Vehicles | Civilian hit UM privately owned vehicle driven by UMPSD officer but CGPD officer used law enforcement Code to describe vehicle to avoid insurance reporting for private entity. |
|---|---|---|---|---|
| 10/23/96 | Notice Memorandum All 006893) | Ron Hill, UM Pkg Division | All Members of the UM Community | Advising the UM it can no longer illegally issue UM tickets on City public streets and collect revenue for fines. |
| 1/29/97 | Memorandum (All 002003) | Christensen | All Sgts. and OICs | Advising the UM officers to stop former practice of issuing illegal UM tickets for handicap parking violations. |

| 9-12-96 | UMPSD Tow Sheet | Officer Henry | City Case Number 96-18342 | Permitted UM officers to Illegally use FDLE Teletype to obtain personal information and opened City Case Number for car towed off private property. |
|---------|-----------------|---------------|----------------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------|
| 9/12/96 | UMPSD Tow Sheet | Officer Torres | City Case Number 96-18368 | Permitted UM officers to Illegally use FDLE Teletype to obtain personal information and opened City Case Number for car towed off private property. |
| 9/16/96 | UMPSD Tow Sheet | Officer Duperme | City Case Number 96-18617 | Permitted UM officers to Illegally use FDLE Teletype to obtain personal information and opened City Case Number for car towed off private property. |

| 9/17/96 | UMPSD Tow Sheet | Officer Henry | City Case Number 9618661 | Permitted UM officers to illegally use FDLE Teletype to obtain personal information and opened City Case Number for car towed off private property. |
|---------|-----------------|---------------|--------------------------|--------------------------------------------------------------------------------------------------------------------------------------------------|
| 9/19/96 | UMPSD Tow Sheet | Officer Torres | City Case Number 96-18791 | Permitted UM officers to Illegally use FDLE Teletype to obtain personal information and opened City Case Number for car towed off private property. |
| 9/20/96 | UMPSD Tow Sheet | Officer Watson | City Case Number 96-18884 | Permitted UM officers to Illegally use FDLE Teletype to obtain personal information and opened City Case Number for car towed off private property. |

| 9 /23/96 | UMPSD Tow Sheet | Officer Duperme | City Case Number 96-19084 | Permitted UM officers to Illegally use FDLE Teletype to obtain personal information and opened City Case Number for car towed off private property. |
|---|---|---|---|---|
| 9/23/96 | UMPSD Tow Sheet | Officer Duperme | City Case Number 96-19096 | Permitted UM officers to Illegally use FDLE Teletype to obtain personal information and opened City Case Number for car towed off private property. |
| Jan-Feb 1994 | Mails | | PAI (Body Armor) | Official body armor sent through mails. |

| Every Year | Interstate Mails | UM | Gall's Incorporated, Lexington, Ky. | Every year Galls ships public safety equipment, i.e., blue lights, sirens, hidden lights and police emblems that only law enforcement agencies may purchase. UM represents itself as such. |
|---|---|---|---|---|
| Jan-Sept 1993 | Mail-and Telephones | CGPD-Recruitment Dept. Sgt. Werbin and Ms. Ruiz. | Andrew Allocco Augustus Quevedo | UM's use of CGPD's letterhead stationary for purposes of hiring. Use of telephones by CGPD personnel to respond to questions and of meetings. Use of CGPD no postage necessary stamp. |
| 1997-1998 | Mails | UM | Daryl Bell Preston Green | UM held itself out as Police Department to acquire personal information not normally available to private employer. |

63.     The above listed items were used by UM to perpetuate the fraud that the UMPSD
        was a division of the CGPD at all times and that UMPSD officers enjoined the same
        rights and benefits.

64.     The above listed items as part of the fraudulent scheme enabled UM to obtain
        merchandise not offered to private entities or enabled UM to obtain the
        merchandise at reduced rates based on UM's representations that the UMPSD was
        a Division of CGPD.

65.     The above listed items as part of a fraudulent scheme demonstrates that UM issued
        private UM parking tickets on public streets and collected fines from these tickets.
        Further, the above items demonstrate that UM issued private UM tickets to cars
        without UM handicap stickers for parking in parking spaces designated Handicap
        parking and collected revenue for them.

66.     The above listed items as part of the fraudulent scheme demonstrates that UM
        utilized the CGPD's teletype machine to enable it to collect parking fines for UM
        tickets issued on private property.

67.     Defendants, UM and Coral Gables have been associated since 1969 and form an
        enterprise as defined by Section 895.02(2) of Florida Statutes.  This enterprise has
        functioned formally and informally since that time as a continuing unit with the
        common purposes of achieving unlawful objectives including but not limited to the
        Scheme as well as obtaining federal and state funding, described in the preceding
        paragraphs.

68.     As a direct and proximate result of Defendants' acts, Plaintiffs have been damaged
        and are threatened with further damage, by the ongoing racketeering activity of the
        Defendants.

69.     Plaintiffs have retained an attorney and are obligated to pay a reasonable attorney's
        fee.

        WHEREFORE, Plaintiffs, respectfully ask that this Honorable Court to enter

judgment in its favor against Defendant, University of Miami and permanently enjoin the

Defendant from continuing to conduct the affairs of an enterprise through a pattern of

racketeering activity in violation of F.S. §895.03, to order Plaintiff's property returned and

award damages, costs attorneys' fees pursuant to the RICO statutes and such other relief

as this Court deems just and fair.

## COUNT VII-DUE PROCESS

### Defendant City of Coral Gables

70.     Plaintiffs, ALLOCCO and FERNANDEZ reallege and reaver paragraphs 1-21, above
        and incorporate them by reference herein as if fully set forth.

71.     This is an action for damages resulting from Defendant, Coral Gables' denial of due
        process in excess of $15,000.00 exclusive of interest and costs.

72.     Plaintiffs' rights were violated by Coral Gables in that Coral Gables deprived
        Plaintiffs of their property interest in their job and stigmatized them through certain
        acts that were made public.

73.     Plaintiffs were sworn in as CGPD officers and therefore entitled to all associated
        rights and benefits including *inter alia*, all rights afforded them in FS § 112.532.

Plaintiffs were paid by UM but were subject to the policies, procedures and regulations governing all CGPD Officers.

74.   In order to work at the UM division, Plaintiffs were required to be members of the CGPD, sworn in by the Police Chief, issued CGPD badges and identification cards, subject to disciplinary action by the CGPD and advised by both UM and CGPD officers that in order to keep one job they must keep the other job.

75.   Contrary to UM and Coral Gables' attempts to dissociate themselves from each other, the day to day activities of the Plaintiffs demonstrate that the two employers were so interrelated that the jobs coexisted such that the CGPD job satisfied the property interest requirement of the Fourteenth Amendment.

76.   In addition, or alternately, upon Plaintiffs's discharge, Defendants made false statements, of a stigmatizing nature, at the time of Plaintiffs' dismissal, which were made public, by Coral Gables, and Plaintiffs were not given a meaningful opportunity to refute the charges.

77.   Specific false statements include a denial of Plaintiffs ALLOCCO and FERNANDEZ's status as police officers, stigmatizing Plaintiffs and preventing them from obtaining work as experienced police officers, such statements were made public by members of the CGPD and through the sunshine laws, and Plaintiffs were advised that they have no right to any post determination hearing.

78.   As a direct and proximate result of Defendant's Actions, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs respectfully ask that this Honorable Court to enter judgment in its favor against Defendant, Coral Gables for damages, attorney fees and costs and punitive damages and such other relief as this Court deems just and fair.

### COUNT VIII-VIOLATION OF F.S.112

### (Florida's Whistle-Blower Statute)

### Defendants, City of Coral Gables and University of Miami

79.    Plaintiffs, ALLOCCO and FERNANDEZ reallege and reaver paragraphs 1-21 and 36-43, above and incorporate them by reference herein as if fully set forth.

80.    This is an action for damages against Defendants, Coral Gables and UM, for violation of Florida Statutes 112 *et. seq.* for damages in excess of $15,000.00 exclusive of interest and costs.

81.    Plaintiffs complied with the conditions precedent for bringing this action by placing their concerns concerning the Defendants' activities in writing to the appropriate agencies and/or persons.

82.    As a direct and proximate result of Plaintiffs acts, Defendants retaliated against Plaintiffs.

83.    As a direct and proximate result of Defendants' acts, Plaintiffs suffered damages.

84.    Plaintiffs have engaged the services of an attorney, and are obligated to pay a reasonable fee.

WHEREFORE, Plaintiffs respectfully ask that this Honorable Court to enter judgment in its favor against Defendants for damages, attorney fees and costs pursuant to the statute and such other relief as this Court deems just and fair.

## COUNT IX-VIOLATION OF CIVIL RIGHTS
## (42 U.S.C. 1983)

85.    Plaintiffs reallege and reaver paragraphs 1-21, 36-43 and 61-84, above and incorporate them by reference herein as if fully set forth.

86.    This is an action for damages pursuant to 42 U.S.C. 1983, against Defendant, Coral Gables for violation of Plaintiffs' civil rights and for damages in excess of $15,000.00 exclusive of interest and costs.

87.    Defendant, Coral Gables, while acting under color of law violated the Plaintiffs' civil rights in that Plaintiffs' suffered the loss of privileges and immunities granted them under the constitution and other laws.

88.    As a direct and proximate result of Defendant's acts, Plaintiffs suffered damages.

89.    Plaintiffs have engaged the services of an attorney, and are obligated to pay a reasonable fee.

WHEREFORE, Plaintiffs respectfully ask that this Honorable Court to enter judgment in its favor against Defendant, Coral Gables for damages, attorney fees and costs pursuant to 42 U.S.C. 1988 and such other relief as this Court deems just and fair.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to: **Suzanne Bogdin, Esq.,** FISHER & PHILLIPS, LLP, 2300, One Financial Plaza, Ft. Lauderdale, Florida 33394; **James C. Crosland, Esq. /Denise Heekin, Esq.**, MULLER, MINTZ, et. al., Suite 3600, First Union Financial Center 200 South Biscayne Blvd., Miami, Florida 33131; **Ronald J. Cohen, P.A.**, Andrew Jackson Building, 8100 Oak lane, Suite

403, Miami Lakes, Florida 33016; and **Manuel Montalvo**, Plaintiff-unrepresented, 7770

S.W. 146th Road, Miami, Florida 33183, on this 22nd day of September 2000.

> FISCHER & MINSKI, P.A.
> Emerald Hills Executive Plaza II
> 4651 Sheridan Street, Suite 325
> Hollywood, FL 33021
> Ph: (954) 963-2773
> Fax: (954) 963-2902
>
> By: _____
>      MARTIN E. FELDMAN, ESQ.
>      Fla. Bar No. 98817